**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-mj-8380-RMM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DARRELL McINTOSH,

    Defendant.

_____/

FILED BY ____SP____ D.C.

Aug 1, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes    X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes    X No

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes    X No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office:   (561) 820-8711
John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| DARRELL McINTOSH | ) Case No. 23-mj-8380-RMM |
| | ) |
| | ) |
| Defendant(s) | ) |

FILED BY ___SP___ D.C.
**Aug 1, 2023**
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __03/02/2023 - 06/01/2023__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(5)(A), 924(a)(8) | Illegal Alien in Possession of a Firearm and Ammunition; and |
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Distribution of a Controlled Substance (Cocaine) |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Christopher Delbaugh, Deportation Officer, ICE
Printed name and title

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: 8/1/23

_____
Judge's signature

City and state: West Palm Beach, Florida
Hon. Ryon M. McCabe, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
### Case No. 23-mj-8380-RMM

I, Christopher Delbaugh, being duly sworn, do solemnly swear and state that:

1. I am a Deportation Officer of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and have been employed in a similar capacity since 2015. I am currently assigned to Enforcement and Removal Operations, Fugitive Operations Team, Stuart, Florida. As a Deportation Officer with ICE, my duties and responsibilities include enforcing criminal and administrative immigration laws of the United States. I have also conducted and participated in investigations of this nature. Previously, from September 2007 to September 2015, I was an Immigration Enforcement Agent with ICE. As an Immigration Enforcement Agent my duties and responsibilities also included enforcing criminal and administrative immigration laws of the United States.

2. As part of my training as a Deportation Officer, I attended the United States Immigration and Customs Enforcement Academy, at the Federal Law Enforcement Training Center, in Glynco, GA. In addition, I received specialized training regarding the investigation and enforcement of United States immigration laws. In my capacity as a Deportation Officer, I am charged with enforcing federal administrative and criminal laws under Titles 8, 18, and 19 of the United States Code. Further, as a federal law enforcement officer, I have the authority to conduct investigations, make arrests, execute search warrants, and take sworn statements.

3. This affidavit is based upon my own knowledge, as well as information provided to me by other law enforcement officers. The information set forth in this affidavit is not intended to detail all facts and circumstance of the investigation known by me or other law enforcement personnel. Rather, this affidavit serves solely to establish that there is probable cause to believe that Darrell McINTOSH (McINTOSH) committed the offenses of being an unlawful alien in

possession of a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(5)(A) and possession with intent to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## PROBABLE CAUSE

4. In March of 2023, the Jupiter Police Department (JPD) initiated an investigation into complaints that narcotics sales and violent disturbances were occurring at a Tiki Bar and Grill, located at 71 E. Indiantown Road, Jupiter, Palm Beach County, Southern District of Florida (hereinafter "the Grill") As part of the investigation, JPD undercover (UC) Agents were utilized to purchase narcotics and a gun from Darrell McINTOSH (McINTOSH), a/k/a, "Bahamas" at or in the vicinity of the Grill. During the UC operation, Jupiter Police Department identified that McINTOSH was selling cocaine at restaurant, as further described below.

5. On March 2, 2023, at approximately 10:00 p.m., a JPD UC Agent was conducting an undercover operation at the Grill in an attempt to make narcotics purchases from drug dealers soliciting within the establishment. During the operation, the JPD UC Agent observed a tall skinny male with medium length dread-locks wearing a white shirt and gray pants, making contact with people in the grill. The male was later identified as Darrell McINTOSH.

6. While observing McINTOSH, the JPD UC followed McINTOSH and another unidentified male into the restroom. While in the restroom, the JPD UC observed McINTOSH enter the bathroom stall with the white male while looking over his shoulder to see if he was being watched. The JPD UC witnessed McINTOSH hand something to the unidentified white male, which due to the UC's training and experience, appeared consistent with a drug transaction.

7. During the operation, the JPD UC Agent made contact and befriended a male "JF" who unwittingly introduced the JPD UC Agent to McINTOSH, who JF advised would sell

2

narcotics to him. At approximately 1:00 a.m., (March 3, 2023), JF walked the JPD UC Agent outside to meet McINTOSH. McINTOSH was standing on the sidewalk approximately 20 feet north of the establishment's front door. Upon meeting McINTOSH, the JPD UC Agent observed him standing with another male identified as "TA."

8. JF advised McINTOSH that the JPD UC Agent wanted to purchase cocaine from him. Both McINTOSH and TA responded $100, in response to the requested cocaine purchase. The JPD UC Agent pulled out $100 of JPD investigative US currency, at which point McINTOSH instructed him to hand it to JF, who then provided the money to McINTOSH. McINTOSH then handed JF a small plastic baggie containing a white powdery substance, who then handed it to the JPD UC Agent completing the narcotics transaction. The JPD UC Agent asked McINTOSH for his phone number and McINTOSH instructed JF to provide it. JF provided McINTOSH's phone number, which was (772) 626-0456.

9. Following the purchase, the JPD UC Agent took the suspected narcotics to the Jupiter Police Department. The JPD UC Agent tested the white powder substance with a NIK Wipe test kit, which tested positive for cocaine. The cocaine was placed into Jupiter Police Department evidence for prosecution, and a subsequent laboratory analysis report from the Palm Beach County Sheriff's Office (PBSO) Crime Laboratory determined the substance to be 0.3524 grams of cocaine.

10. On March 24, 2023, JPD conducted a follow up UC operation at the grill to make narcotics purchases from drug dealers soliciting within the establishment through the use of JPD UC Agents. During the operation JPD UC Agents identified McINTOSH, along with two males later identified as KA and TA continuously going from the establishment into a gray Ford Escape (FL tag: 14DGAK) parked outside of the Grill. JPD UC Agents made contact with McINTOSH

inside the establishment near the entrance. In an audio and video recorded contact, a JPD UC Agent asked McINTOSH to sell him one (1) gram of "sand" (cocaine), at which time McINTOSH told the JPD UC Agent to follow him into the bathroom. Upon entering the restroom, the JPD UC Agent followed McINTOSH into the bathroom stall where he pulled out $100 of JPD investigative US currency and purchased from McINTOSH a small plastic baggie of a white powdery substance. The JPD UC Agent advised McINTOSH that he might need a larger quantity of narcotics in the future and exited the bathroom.

11.     After the purchase, the JPD UC Agents transported the suspected narcotics to the Jupiter Police Department. JPD UC agents tested the white powdery substance with a NIK wipe test kit, which tested positive for cocaine. The suspected cocaine was placed into Jupiter Police Department evidence for prosecution, and subsequently determined by the PBSO Crime Laboratory to be 0.3083 grams of a mixture and substance containing cocaine.

12.     On Thursday May 18, 2023, at approximately 11:48 a.m., McINTOSH texted the JPD UC Agent from phone number (561) 768-6575. McINTOSH stated "supbro it's Bahamas I got a good link with what you been asking about….hit me up on this number when you get a chance." At approximately 12:56 p.m., the JPD UC Agent contacted McINTOSH on the above stated phone number to discuss further drug sales. McINTOSH answered the phone and the JPD UC Agent advised him that he wanted to purchase a larger amount of cocaine so he could sell it for a "side hustle." The JPD UC Agent further stated that he would be getting a "fire" (firearm) for protection and prevent people from robbing him during drug deals. McINTOSH acknowledged the statement and responded, "yea, I stay with mine." Based on McINTOSH's response, the JPD UC Agent offered to purchase McINTOSH's firearm. McINTOSH responded stating that he had somebody who "has an extra one."

13. On Saturday, May 20, 2023, at approximately 4:41 p.m., McINTOSH texted the JPD UC Agent from phone number (561) 768-6575. McINOSH texted "What up bro you never hit me back." During the text conversation, the JPD UC Agent advised McINTOSH that he still wanted to purchase a firearm. McINTOSH responded stating that he would sell a 9mm for $750.

14. On Friday, May 26, 2023, at approximately 6:15 p.m., McINTOSH texted the JPD UC Agent from phone number (561) 768-6575. McINTOSH texted, "Sup bro you still wanna bye the iron?" Based on the JPD UC Agent's training and experience, he recognized the word "iron" as street terminology for a firearm. During the text conversation, McINTOSH committed to selling the JPD UC Agent the firearm the following week on Thursday, June 1, 2023.

15. On May 30, 2023, at approximately 8:57 a.m., the JPD UC Agent texted McINTOSH on phone number (561) 768-6575. The JPD UC Agent texted "Is there anyway you can a better on that thing Thursday?...750 a lot and I tryin to get sand to…" At approximately 2:25 p.m., McINTOSH responded to the JPD UC Agents text stating "Yo the best I could do is 600 I'll take 150 off brother." During the text dialogue, McINTOSH subsequently agreed to meet the JPD UC Agent on June 1, 2023, to sell the UC the firearm (for $600.00) and an "8-ball" (1/8 oz) of cocaine (for $300.00).

16. On May 31, 2023, the JPD UC texted McINTOSH at phone number 772-946-5509 and asked "What's the total? 900?" At approximately 11:43 a.m., McINTOSH called the JPD UC to discuss the sale, and confirmed the total for the pistol and cocaine to be $900.00. McINTOSH described the firearm as a 9mm Jimenez, and stated that it was already loaded with bullets. McINTOSH agreed to meet the JPD UC the following day at approximately 10:30 a.m., at a prearranged location in Jupiter, Florida, to consummate the transaction.

17. On June 1, 2023, at approximately 10:14 a.m., the JPD UC Agent texted (561-768-6575) McINTOSH the meet location (431 Jupiter Lakes Blvd, Jupiter, Palm Beach County, Southern District of Florida). At approximately 10:37 a.m., McINTOSH arrived in a grey KIA Optima (FL plate: 96GNQ), as the front seat passenger of the vehicle, which was being driven by an individual subsequently identified as JW. Upon parking, the JPD UC Agent entered the KIA via the rear driver side door and initiated the sale of the firearm to the JPD UC in an audio and video recorded transaction. The JPD UC has a direct view of McINTOSH as he got into the vehicle on the rear driver's side, and observed a pistol sitting on McINTOSH's lap, as McINTOSH placed a loaded magazine inside the grip of the pistol. McINTOSH was further observed wiping the exterior the firearm with both a blue towel and his shirt prior to receiving the $600 payment from the JPD UC. Upon receiving the weapon and blue towel from McINTOSH, the JPD UC Agent placed the 9mm handgun and blue towel into his backpack. After the weapon purchase, the JPD UC fronted $300 of JPD investigative US currency to McINTOSH for the purchase of an 8-ball of cocaine later in the day and exited the vehicle without incident.

18. Immediately after the JPD UC Agent exited the vehicle, the KIA departed the meeting location and was stopped by Jupiter Police SWAT at the intersection of Jupiter Lakes Blvd and Military Trail, and both JW and McINTOSH were taken into custody without incident. The firearm sold to the JPD UC was determined to be a loaded Jimenez Arms Model JA-Nine, 9mm semi-automatic pistol. The suspects and the KIA were transported to the JPD for questioning and inventory. The UC and the firearm were retrieved at the scene and transported to the JPD, where the firearm was processed by Jupiter Police Department Crime Scene Investigations Unit.

19. As a result of a referral from JPD, your affiant reviewed McINTOSH's United States immigration records, which established that he is a native and citizen of Bahamas who

entered the United States on August 24, 2005, at the Palm Beach International Airport in West Palm Beach, FL on a B2 visitor visa. McINTOSH was admitted for a time period **not to exceed February 24, 2006**. McINTOSH failed to depart prior to February 24, 2006. McINTOSH's knowledge of his illegal status was confirmed during post-*Miranda* interviews on June 1, 2023, at the Jupiter Police Department. *Miranda* was provided to McINTOSH via a Jupiter Police Department *Miranda* card, which McINTOSH acknowledged he understood and signed. Department of Homeland Security Immigration checks conducted by your affiant determined that McINTOSH has filed no application for a renewel or continuation of his status in the United States since his Visa expired in 2006, nor received any such authorization, and accordingly is an alien illegally or unlawfully in the United States under federal law.

20. During the post-*Miranda* interview, McINTOSH confirmed that he entered the United States sometime around 2006 and was required to leave within six months. McINTOSH further admitted that he failed to depart within the required six-month time period due to a girl he was seeing at the time. McINTOSH's admissions were also subsequently recorded during a follow up interview via JPD body camera during questioning by your affiant to ascertain McINTOSH's immigration status.

21. On June 7, 2023, ATF Special Agent and Interstate Commerce Nexus Expert Vincent Rubbo examined the firearm and ammunition seized in this investigation by the JPD. Subsequent examination of the Jimenez Arms 9mm pistol sold by McINTOSH to the JPD UC determined such to have been loaded with three (3) rounds of Remington 9mm Luger ammunition with cartridge case headstamp marking of "R-P" and "9mm Luger". Additionally, there were seven (7) rounds of Fiocchi 9mm Luger ammunition with cartridge case head stamp markings of "G.F.L" and "9mm Luger". Based upon Special Agent Rubbo's training and experience, he determined that

the Jimenez Arms pistol and its accompanying rounds of ammunition were manufactured outside the State of Florida. Therefore, based upon the expert opinion of Special Agent Rubbo, and its subsequent recovery in the State of Florida, the firearm and ammunition purchased from McINTOSH during the UC operation with JPD had, of necessity, previously travelled in interstate commerce.

22. Based upon the foregoing, your Affiant submits that there is probable cause to believe that on March 2, 2023, and March 30, 2023, Darrell McIntosh, did knowingly possess cocaine with the intent to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

23. Additionally, your Affiant submits that there is probable cause to believe that on June 1, 2023, Darrell McIntosh, then being an alien illegally and unlawfully in the United States, did knowingly possess a firearm, in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(g)(5)(A).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
CHRISTOPHER DELBAUGH
DEPORTATION OFFICER
IMMIGRATION AND CUSTOMS ENFORCEMENT

SWORN AND ATTESTED TO ME BY
APPLICANT VIA TELEPHONE (FACETIME)
PURSUANT TO FED. R. CRIM. P. 4(d) AND 4.1
THIS ___1___ DAY OF AUGUST, 2023.

_____
HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Darrell McINTOSH

**Case No:** 23-mj-8380-RMM

**Count # 1**
**Illegal Alien in Possession of a Firearm and Ammunition**
**Title 18, United States Code, Sections 922(g)(5)(A), 924(a)(8)**
* **Max. Term of Imprisonment:** Fifteen (15) years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00

**Count # 2**
**Distribution of a Controlled Substance (Cocaine)**
**Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)**
* **Max. Term of Imprisonment:** Twenty (20) years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** Life
* **Max. Fine:** $1,000,000.00
* **Special Assessment:** $100.00